# Exhibit 1

Collective Action Settlement Agreement
and Release and Exhibits

## COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

Subject to Court approval, Carrefour Associates LLC, Crossroads Hospice of Cincinnati LLC, Crossroads Hospice of Cleveland LLC, Crossroads Hospice of Dayton LLC, Crossroads Hospice of Northeast Ohio LLC, and Perry Farmer, including their officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities (collectively, "Defendants"), and Trista L. Freeman, ("Named Plaintiff") on behalf of herself individually, and on behalf of a collective group of similarly situated individuals she seeks to represent, voluntarily enter into this Settlement Agreement and Release (this "Agreement") to settle all claims and issues as set forth more fully below.

### I.    RECITALS

**WHEREAS**, in *Freeman v. Crossroads Hospice of Northeast Ohio LLC, et al.*, with Case No. 5:20-cv-1579, filed in the United States District Court for the Northern District of Ohio, ("the Action"), Named Plaintiff asserted claims against Defendants on behalf of herself and others similarly situated under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq*., and the Ohio Revised Code § 4111.03(D) and § 4113.15, alleging unpaid overtime, liquidated damages, attorneys' fees, costs, expenses, and interest; and

**WHEREAS**, Defendants deny Named Plaintiff's allegations, and further deny any wrongdoing, or legal liability, under any federal, state, or local laws pertaining to payment of wages or compensation of any kind arising from any facts or conduct alleged in the Action; and

**WHEREAS**, in order to avoid the burden, expense, risks and uncertainty of litigation, the Parties have agreed to settle, and resolve, subject to the terms of this Agreement; and

**WHEREAS**, the purpose of this Agreement is to fully and finally settle all Released Claims (as defined below) Named Plaintiff and any Claimants (as defined below) may have against Defendants; and

**NOW, THEREFORE**, **THE PARTIES AGREE,** in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for in this Agreement, and intending to be legally bound, to a full and complete settlement of the Action and release of all claims on the following terms and conditions:

## II.    DEFINITIONS

For purposes of this Agreement, and wherever used in this Agreement, and in all of its exhibits, the terms set forth below shall have the following meanings:

1.      "Potential Plaintiffs" means the group of approximately 225 current and former hourly employees employed by Defendants in Ohio who worked more than 40 hours in a workweek and who were paid additional compensation, including "Oncall" pay and "Emergency Incentive Pay", during the Covered Period and who have at least $10.00 in alleged damages, as defined below.

2.      "Party-Plaintiff(s)" means Named Plaintiff and the current three Opt-in Plaintiffs: Donna Comeaux, Tabitha McFadden, and Melissa Gazzuolo. Party-Plaintiffs and Potential Plaintiffs will be collectively referred to as "Plaintiffs".

3.      "Claimant" means each Potential Plaintiff who completes, signs, and submits a valid and timely Claim Form, and includes the Party-Plaintiffs.

4.      "Plaintiffs' Counsel" means Nilges Draher LLC.

5.      "Covered Period" refers to the period from **July 6, 2017** through **October 20, 2020**,

which reflects the data produced by Defendants and used for settlement negotiations.

6.       "Court" means United States District Court for the Northern District of Ohio.

7.       "Approval Order" means the Court's Order approving this Settlement.

8.       "Global Settlement Fund" means the gross settlement amount of **$50,000.00**, which is the total amount of funds available for payment to Plaintiffs for claims asserted in the Action, including but not limited to unpaid and/or untimely payment of wages, overtime, liquidated damages, attorneys' fees, penalties, costs, expenses, the Settlement Administrator costs, interest, the Service Award, and any other monetary claims related to the payment of wages. The Global Settlement Fund includes the Settlement Administrator Costs. The Global Settlement Fund does not include Defendants' share of any payroll taxes associated with any portions of the Settlement Awards designated as wages under IRS Form W-2.

9.       "Net Settlement Fund" means the amount available for individual Settlement Awards to the Plaintiffs, after deducting all attorneys' fees, costs, expenses, the Settlement Administrator Costs, and the Service Award.

10.      "Settlement" means the Parties' resolution of the Action as to Named Plaintiff and the Claimants.

11.      "Released Parties" means Defendants and any of their officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities and any other persons acting by, through, under, or in concert with, any of these persons or entities, and their successors.

12.      "Released Claims" means that Named Plaintiff and the Claimants that cash their settlement checks will release the Released Parties from all federal, state, and/or local wage-and-

hour claims that were or could have been alleged in the Complaint (ECF No. 1), including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses pursuant to the FLSA and Ohio law through the Effective Date. In addition to the Released Claims, Named Plaintiff will execute a global release of the Released Parties through the Effective Date. The Released Claims and the additional release of Named Plaintiff do not include release of claims for workers' compensation, claims for unemployment, or claims that cannot be released by law.

13.    "Settlement Administrator" means Analytics Consulting, LLC.

14.    "Settlement Administrator Costs" means all settlement administration fees, expenses, and costs incurred by the Settlement Administrator directly or indirectly related to its duties under this Agreement, including but not limited to all fees, expenses, and costs in connection with the Global Settlement Fund and Net Settlement Fund, and those duties related to notice, check cutting and mailing, reports to counsel, court filings, legal and accounting advice relating to the establishment of the Net Settlement Fund and tax treatment and reporting of awards to Named Plaintiff and Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), calculating Settlement Awards, and any other related duties.

15.    "Settlement Award" means the amount of the Net Settlement Fund calculated under **Section X** of this Agreement that would, or will, be paid to each Claimant.

16.    "Service Award" means the payment made from the Global Settlement Fund to Named Plaintiff for her services and expense in bringing and prosecuting the Action. The Service Award is subject to the Court's approval, and any amount that is not approved by the Court shall become part of the Net Settlement Fund.

17.     "Notice of Settlement" means the forms approved by the Parties' Counsel, and subject to Court approval, that will be mailed *via* first-class U.S. mail to each Potential Plaintiff, which will explain this Settlement and the claims process and provides each Potential Plaintiff with the amount of his or her Settlement Award. A copy of the Notice of Settlement is attached as **Exhibit A**.

18.     "Claim Form" means a form approved by the Parties' Counsel, and subject to Court approval, that each Potential Plaintiff must sign, complete in full, and timely submit *via* first-class U.S. mail within 90-days following mailing of the Notice of Settlement to recover a Settlement Award. A copy of the Claim Form is attached as **Exhibit B**.

19.     "Effective Date" means the date on which the Court approves this Settlement.

### III.    NO ADMISSION OF LIABILITY

20.     Defendants deny liability or wrongdoing of any kind associated with the claims alleged in the Action. Consequently, this Agreement is a compromise, and shall not be construed as an admission of liability, culpability, wrongdoing, or negligence by Defendants or the Released Parties, for any purpose, and under any circumstance. This Agreement, as well as the negotiations that occurred in connection with its creation, shall not constitute evidence with respect to any issue, or dispute, in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement. The Parties do not concede any claims or defenses that were, or could have been, raised in the Action; rather, they merely negotiated and reached a settlement to avoid further disputes and litigation and the attendant inconvenience and expense.

21.     This Settlement shall not become effective until the Court's approval of this

Settlement and dismissal of the Action with prejudice. If the Court does not approve this Settlement for any reason, the Parties will attempt to address the Court's concerns, and resubmit a revised agreement, if possible. If the Parties cannot agree on a revised agreement on their own, the Parties further agree to engage Mediator David P. Kamp for the purpose of helping the Parties to resolve any disputes about the terms and conditions of any revised agreement to be re-submitted to the Court. If the Court does not approve a re-negotiated agreement, this Agreement, or the re-negotiated agreement, shall be terminated as of the date of the Court's Order denying the same. Upon termination of this Agreement, or any renegotiated agreement:

a.      This Agreement and, if applicable, the re-negotiated agreement, shall have no force or effect and no Party shall be bound by any of its terms;

b.      The stipulation that the Potential Plaintiffs are similarly-situated to Named Plaintiff under 29 U.S.C. § 216(b) and any other law, and any releases given, shall be null and void;

c.      Nothing in this Agreement shall be used, or construed, by, or against, either of the Parties as a determination, admission, or concession of any issue of law or fact in the litigation; and

d.      The Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the litigation.

### IV.      CONSENT TO COURT-FACILITATED NOTICE

22.      For purposes of this Settlement only, the Parties consent to Court-facilitated notice to Potential Plaintiffs; they shall cooperate, and present to the Court for its approval, this

Agreement, a proposed Court-facilitated notice, and such information as may be reasonably requested by the Court for approving FLSA settlements and/or facilitated notice.

23.     The Parties will cooperate, and take all necessary steps, to effectuate Court approval of their intended settlement. More specifically, Defendants agrees to share with the Settlement Administrator any information necessary to determine Settlement Awards and confirm the distribution of settlement amounts among the Claimants. Such information may include, but is not limited to, contact information, dates of employment and social security numbers. Potential Plaintiffs are those with $10.00 or more damages using the data provided by Defendants for mediation on November 12, 2020.

## V.    SETTLEMENT TERMS AND CONDITIONS

24.     Because the Parties agree to use their best, reasonable efforts, and to fully cooperate with each other, to implement and effectuate the terms of this Agreement, to expedite the settlement administration process, the Parties' counsel are authorized to communicate directly with the Settlement Administrator.

25.     For purposes of this Settlement only, the Parties agree that Plaintiffs are similarly situated under 29 U.S.C. § 216(b) of the FLSA.

26.     In exchange for Released Claims, Defendants will pay each Claimant a Settlement Award, as calculated under **Section X** of this Agreement.

27.     For tax purposes, the Parties agree Settlement Awards will be designated as follows: (1) For Settlement Awards that are $50 or more, the Settlement Award will be designated as: (a) 50 percent taxable, wage income paid under Internal Revenue Service ("IRS") Form W-2 and subject to ordinary payroll withholdings under federal and state law, and (b) 50 percent

taxable, non-wage income paid under IRS Form 1099; (2) For Settlement Awards that are less than $50, the Settlement Award will be designated as 100 percent taxable wage income paid under Internal Revenue Service ("IRS") Form W-2 and subject to ordinary payroll withholdings under federal and state law. Defendants will pay Defendants' share of any payroll taxes associated with any portions of the Settlement Awards designated as wages under IRS Form W-2, and such amounts will not be deducted from the Global Settlement Fund.

28.     Plaintiffs' Counsel may apply to the Court for a Service Award for Named Plaintiff in the amount of **$2,000.00** to be paid from the Global Settlement Fund, which Defendants will not contest. For tax purposes, the Parties agree the Service Award will be designated as: (a) 50 percent taxable, wage income paid under Internal Revenue Service ("IRS") Form W-2 and subject to ordinary payroll withholdings under federal and state law, and (b) 50 percent taxable, non-wage income paid under IRS Form 1099. Defendants will pay Defendants' share of any payroll taxes associated with the portion of the Service Award designated as wages under IRS Form W-2, and such amounts will not be deducted from the Global Settlement Fund.

29.     Each Claimant will receive an IRS Form 1099 and/or Form W-2 reflecting the Settlement Award and/or Service Award check(s) paid to him or her under this Agreement. Claimants will be responsible for any tax liability determined to be owed by Claimants by any taxing authority with competent jurisdiction arising from the allocation of the Global Settlement Fund as attorneys' fees, costs, and expenses, Service Awards, taxable wage income, and taxable non-wage income.

30.     In the event of any dispute over a Plaintiff's dates of employment, the Parties will meet and confer in good faith to resolve the dispute.  Defendants' records produced to date shall

control any dispute under this Paragraph and will have a rebuttable presumption of correctness. If the Parties are unable to reach an agreement, the Mediator, David P. Kamp, shall decide the dispute, and his decision will be final.

## VI.     ATTORNEYS' FEES, COSTS, AND EXPENSES

31.     Plaintiffs' Counsel will seek an order from the Court approving the payment of their (a) fees for services, not to exceed one-third (1/3) of the Global Settlement Fund, and (b) costs and litigation expenses, not to exceed a reasonable amount of costs and litigation expenses actually expended by, or on behalf of, Plaintiffs. Defendants will not contest this application. Any attorneys' fees, costs, and litigation expenses approved by the Court will be paid from the Global Settlement Fund. This Settlement is not conditioned upon the Court's approval of Plaintiffs' Counsel's petition for fees, costs, and litigation expenses in any amounts, and any amounts not approved by the Court will revert to the Net Settlement Fund.

## VII.     SETTLEMENT ADMINISTRATOR & ADMINISTRATOR COSTS

32.     The Parties agree to retain a Settlement Administrator responsible for:

      a.     Issuing all funds from the Global Settlement Fund;

      b.     Determining and finalizing the Settlement Awards and the tax withholding amounts and employer payroll tax amounts for Claimants, as applicable;

      c.     Promptly apprising the Parties' counsel of the activities of the Settlement Administrator, timely responding to inquiries of the Parties or their counsel, and copying the Parties' counsel on material correspondence;

      d.     Mailing Settlement checks (or other negotiable instrument) to all Claimants;

      e.     Wiring Plaintiffs' Counsel's attorneys' fees, expenses, and costs;

f.      Mailing the Service Award to Named Plaintiff in accordance with this Agreement and Order of the Court;

g.      Mailing reminder postcards to Claimants who have not cashed their Settlement checks no later than 30 days before the check void date;

h.      Issuing IRS Forms W-2, 1099, and W-9 (if required) for all payments to each Claimant and to Plaintiff;

i.      Ascertaining current addresses and addressees' information for each Notice of Settlement returned as undeliverable;

j.      Referring to Plaintiffs' Counsel all inquiries by Potential Plaintiffs the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Claim Administrator's duties specified in this Agreement;

k.      Promptly notifying the Plaintiffs' Counsel of any material requests or communications made by any Potential Plaintiff who receives the Notice of Settlement;

l.      Maintaining adequate records of its activities, including the date of the mailing of the Notices of Settlement, receipt of returned mail, and other communications, and attempted communications, with Potential Plaintiffs, and providing the Parties' counsel with weekly reports regarding the same;

m.      Confirming, in writing to the Parties' counsel and the Court, its completion of the administration of this Settlement and retaining copies of all endorsed Settlement checks; and

n.     Such other tasks as customarily and regularly performed by a settlement administrator and as the Parties mutually agree.

33.     Settlement Administrator Costs shall be paid from the Global Settlement Fund.

## VIII.     SETTLEMENT ADMINISTRATION TIMELINE

34.     Within 7-days of the Effective Date, the Settlement Administrator shall open an interest-bearing bank account, which will hold the Global Settlement Fund. Within 14-days of the Effective Date, (the "Data Delivery Date"), Defendants shall provide the Settlement Administrator with an Excel chart listing the names, social security numbers, last known addresses, and "JLID" numbers for the Party-Plaintiffs and all Potential Plaintiffs whose alleged damages exceed $10, as that information exists in Defendants' records. The Settlement Administrator shall attempt to confirm the accuracy of the Potential Plaintiffs' addresses through the United States Post Office's National Change of Address database and shall mail the Notice of Settlement to any updated address obtained therefrom.

35.     Within 10-days of the Data Delivery Date, as directed by the Settlement Administrator, Defendants shall deposit **$50,000.00** into the interest-bearing bank account opened by the Settlement Administrator.

36.     Within 4-days of the Data Delivery Date or 21-days of the Effective Date, whichever is sooner, the Settlement Administrator shall send to Plaintiffs' Counsel by wire or mail its attorneys' fees and litigation costs.

37.     Within 4-days of the Data Delivery Date or 21-days of the Effective Date, whichever is sooner, the Settlement Administrator shall send via first-class mail Named Plaintiff's Service Award.

38.     Within 14-days of the Data Delivery Date, the Settlement Administrator will calculate the Settlement Award for each Potential Plaintiff under the formula described in **Section X** of this Agreement.

39.     Within 20-days of the Data Delivery Date, the Settlement Administrator shall mail to all Potential Plaintiffs the Notice of Settlement, Claim Form, and an enclosed, postage-paid return envelope. If any Notice of Settlement is returned as undeliverable, the Settlement Administrator will promptly attempt to locate such Potential Plaintiff through other reasonable and legally acceptable means, and, if located, shall promptly mail an additional Notice of Settlement to such person.

40.     Each Potential Plaintiff shall have 90-days from the date Notice of Settlement is initially mailed under Paragraph 39 of this Agreement to submit his or her signed and completed Claim Form, and any such submission must be postmarked, e-mailed, or facsimiled on, or before, the 90th day from the date of initial mailing.  Within 100 days from the date Notice of Settlement is initially mailed under Paragraph 39 of this Agreement, the Settlement Administrator shall provide the Parties' Counsel a list Claimants and shall provide electronic copies of all timely received and completed Claim Forms. In addition, copies of all timely received and completed Claim Forms shall be provided to Defendants' Counsel so that Defendants' Counsel may, at its option, file all Claim Forms with the Court. Should Defendants' Counsel file such Claim Forms, they will be redacted suitable for filing with the Court—i.e., removing addresses and other personally identifying information—by Defendants' Counsel prior to filing.

41.     Within one 120-days from the date Notice of Settlement is initially mailed under Paragraph 39 of this Agreement, the Settlement Administrator shall mail to Claimants their

Settlement Awards. If possible, the Settlement Administrator will issue each Claimant one single check representing the total amount of his or her Settlement Award by combining the wage and non-wage portions of his or her Settlement Award. In accordance with the withholding and reporting requirements set forth in this Agreement, the Settlement Administrator shall report the wage income payments to the IRS on IRS Form W-2 and shall report the non-wage income on IRS Form 1099.

## IX.    GLOBAL SETTLEMENT FUND & TAXES

42.    The Global Settlement Fund will be established as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.,* and shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

43.    The Settlement Administrator shall serve as Trustee of the Global Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Global Settlement Fund, including the handling of tax-related issues and payments. The Settlement Administrator shall act in a manner necessary to qualify the Global Settlement Fund as a Qualified Settlement Fund and to maintain that qualification. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Global Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

44.    The Parties recognize the wage and non-wage awards to Named Plaintiff and Claimants will be subject to applicable tax withholding and reporting and employer payroll taxes. The Settlement Administrator shall calculate the employer's share of payroll taxes related to

Settlement Award payments treated as wage income and, upon receipt of that calculation, Defendants will, as directed by the Settlement Administrator, deposit into the interest-bearing bank account opened by the Settlement Administrator a payment separate from the Global Settlement Fund to pay the employer's share of payroll taxes related to Settlement Award payments treated as wage income.

45.     All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Global Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendants with respect to income earned for any period during which the Global Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses") shall be paid out of the Global Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Global Settlement Fund. The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

46.     The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and shall pay from the Global Settlement Fund any and all taxes, as well

as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement.

## X.  SETTLEMENT AWARD CALCULATION

47.  Defendants produced wage and hour data for 836 individuals, anonymously identified by number only; except, Defendants identified Named Plaintiff as number 554, and the other Party-Plaintiffs as follows: Comeaux (568); McFadden (290); and Gazzuolo (286).

48.  The Parties agree that the Party-Plaintiffs will be paid a Settlement Award of not less than $10.00.

49.  The percentage share of estimated individual payments for all 836 individuals was computed using payroll data from the maximum 3-year statute of limitations period at the time of settlement using the model built by Plaintiff's Counsel's vendor. These percentage-shares were then applied to the Net Settlement Fund to determine the Settlement Award payments.

50.  Except for Party-Plaintiff McFadden, who is guaranteed a minimum payment of $10.00 pursuant to Paragraph 48, 611 of the 836 original individuals were determined to have less than $10.00 in damages. Accordingly, the Parties understand, for purposes of this Agreement, including Named Plaintiff, there will be approximately 225 Potential Plaintiffs.

51.  A list of proposed Settlement Award payments is attached as **Exhibit C**.

## XI.  REMAINDER OF THE GLOBAL SETTLEMENT FUND

52.  All Settlement Award checks that are not negotiated by a Claimant within <u>180-days</u> of date issuance, as noted on the Settlement Award checks mailed by the Settlement Administrator to the Claimants, shall be null and void; the associated funds shall not be redistributed among the Claimants, any such funds shall belong to Defendants, and this Agreement shall remain binding

on all of the Claimants.

53.     The Parties agree that any funds remaining in the interest-bearing bank account holding the Global Settlement Fund 200-days after the issuance of Settlement Award checks under Paragraph 41 of this Agreement shall be returned by the Settlement Administrator to Defendants. Any such payment under this paragraph shall be made within 221-days after the issuance of Settlement Award checks under Paragraph 41 of this Agreement.

## XII.     RELEASE OF CLAIMS

54.     **Claimants**. By operation of participating in the Settlement and/or negotiating their Settlement Awards, each Claimant forever and fully releases the Released Parties (as defined in Paragraph 11) of all Released Claims (as defined in Paragraph 12) though the Effective Date.

55.     **Named Plaintiff.** In addition to the Released Claims (as defined in Paragraph 12) the Named Plaintiff also releases and discharges the Released Parties from all claims asserted, or claims, rights, demands, liabilities, and causes of action that have been or could have been asserted, under all federal, state, and/or local laws ("Service Award Released Claims") though the Effective Date. The Service Award Released Claims include any and all claims arising under federal, state, and/or local law, including, but not limited to, all wage and hour laws, antidiscrimination laws, and employee benefit laws. The Service Award Released Claims include, but are not limited to, all claims arising under Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Civil Rights Act of 1991, the Federal Family Medical Leave Act, the Equal Pay Act, and the statutes and regulations of any state relating to the foregoing, whether known or unknown, asserted or unasserted, of any kind whatsoever, arising at any point prior to entry of the Approval Order, including without limitation, claims for wages, damages, unpaid costs, penalties, liquidated

damages, punitive damages, interest for unpaid regular or overtime wages, any related wage and hour claims, interest on such claims, and attorney's fees and costs related to any Service Award Released Claims, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, from the beginning of time through the date of the Approval Order. The Service Award Released Claims do not include claims for workers' compensation, claims for unemployment, or claims that cannot be released by law.

### XIII. NON-DISPARAGEMENT, NEUTRAL REFERENCE, RETALIATION

56. Named Plaintiff agrees and covenants that she shall not defame or maliciously disparage the Released Parties or take any other actions that would damage their respective business interests, reputation or name. Defendants agree and covenant that they shall instruct Named Plaintiff's direct supervisor at the time of Named Plaintiff's termination that he or she shall not defame or maliciously disparage Named Plaintiff or take any other actions that would damage her respective business interests, reputation or name. The Parties' obligations with regard to non-disparagement extend to, but are not limited to, disparaging text messages, e-mail communications, and comments or postings on blogs, comment boards, and social media networking websites made after this Agreement. This Agreement shall not be construed to prevent Named Plaintiff or anyone else from providing truthful testimony or responses to governmental inquiries. Should any prospective employer of Named Plaintiff contact Defendants to verify employment, Defendants agree to provide the prospective employer only Named Plaintiff's dates of service and position(s) held at the Defendants' business. By entering into this Agreement, Defendants affirm that they will not retaliate against any Plaintiff and as required by the FLSA and state law.

## XIV.  NOTICES

57.  All notices, requests, demands, and other communications required or permitted to

be given pursuant to this Agreement shall be in writing and shall be delivered personally or mailed,

postage prepaid, by first-class mail to the undersigned persons at their respective addresses:

**Plaintiffs' Counsel:**
    Robi J. Baishnab (0086195)
    34 N. High Street, Ste. 502
    Columbus, Ohio 43215
    Telephone: (614) 824-5770
    Facsimile: (330) 754-1430 (Fax)
    Email: rbaishnab@ohlaborlaw.com

    Hans A. Nilges (0076017)
    Shannon M. Draher (0074304)
    7266 Portage Street, N.W., Suite D
    Massillon, OH 44646
    Telephone: (330) 470-4428
    Facsimile: (330) 754-1430
    Email: hans@ohlaborlaw.com
     sdraher@ohlaborlaw.com

**Counsel for Defendants:**
    David K. Montgomery (0040276)
    Jamie M. Goetz-Anderson (0083562)
    PNC Center, 26th Floor
    201 E. Fifth Street
    Cincinnati, OH  45202
    (513) 898-0050
    (513) 898-0051 (Fax)
    david.montgomery@jacksonlewis.com
    jamie.goetz-anderson@jacksonlewis.com

## XV.  CONSTRUCTION, INTERPRETATION, MODIFICATION, AND PUBLICITY

58.  This Agreement constitutes the entire agreement between the Parties with respect

to the subject matter included in this Agreement and it shall supersede all prior and

contemporaneous negotiations between the parties. This Agreement shall be construed as a whole

according to its fair meaning and intent, and not strictly for, or against, any party, regardless of who drafted, or who was principally responsible for drafting, this Agreement, or any specific term or condition in this Agreement. The Parties participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, the Parties may not claim any ambiguity in this Agreement should be construed against another.

59.     If there is a conflict between this Agreement and any other document related to this Settlement, the Parties intend for this Agreement to control.

60.     Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. The Parties agree this Agreement is to be construed according to its terms and it may not be varied, or contradicted, by extrinsic evidence.

61.     This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Ohio, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, and shall be subject to the continuing jurisdiction of the Court. The Parties agree that if either Party breaches any of the terms and conditions of this Agreement, the non-breaching Party shall be entitled to reasonable attorneys' fees and expenses incurred to enforce the terms and conditions contained herein and as determined by a court of competent jurisdiction.

62.     If any provision of this Agreement, except the Release, is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable the remaining portions of

this Agreement will remain in full force and effect to the extent the effect of this Agreement, as well as the obligations of the Parties, remains materially the same.

63.     This Agreement may not be modified or amended, except in writing, signed by the Parties or their counsel, and as approved by the Court. This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

64.     This Agreement is binding upon, and shall inure to the benefit of, the Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit of Defendants as well as their officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities; likewise, this Agreement shall be binding upon Plaintiff's, and the Claimants', spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring.

## XVI.     CONTINUING JURISDICTION

65.     The Parties agree that their Joint Motion for Settlement Approval will include a request for the Court to retain continuing jurisdiction to construe, interpret, and enforce the provisions of this Agreement; to supervise the administration and distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement, or issues of law and facts asserted in the Action.

**WHEREFORE,** having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

DATED: 12/17/2020     PLAINTIFF TRISTA FREEMAN

DocuSigned by:

_____
FA9C4EC2D287455...

DATED: _____     DEFENDANT CARREFOUR ASSOCIATES LLC

By: _____

Its: _____

DATED: _____     DEFENDANT CROSSROADS HOSPICE OF CINCINNATI LLC

By: _____

Its: _____

DATED: _____     DEFENDANT CROSSROADS HOSPICE OF CLEVELAND LLC

By: _____

Its: _____


DATED: _____     DEFENDANT CROSSROADS HOSPICE OF
                                        DAYTON LLC


By: _____


Its: _____


DATED: _____     DEFENDANT CROSSROADS HOSPICE OF
NORTHEAST OHIO LLC


By: _____


Its: _____


DATED: _____     DEFENDANT PERRY FARMER


By: _____


Its: _____

25756081.1

4838-5699-2724, v. 1

# Exhibit A
Settlement Notice

## NOTICE OF SETTLEMENT OF COLLECTIVE ACTION LAWSUIT

**You are receiving this notice because you are a potential member of a collective action and eligible to participate in a settlement. A federal court approved this notice.**
**This is not a solicitation from a lawyer.**

**This notice is being sent to current and former hourly employees employed by Carrefour Associates LLC, Crossroads Hospice of Cincinnati LLC, Crossroads Hospice of Cleveland LLC, Crossroads Hospice of Dayton LLC, Crossroads Hospice of Northeast Ohio LLC, and/or Perry Farmer ("Defendants") in Ohio who worked more than 40 hours in a workweek and who were paid additional compensation, including "Oncall" pay and "Emergency Incentive Pay", and who have at least $10.00 in alleged damages as determined through the Court-approved settlement, from July 6, 2017 through October 20, 2020. You are receiving this Notice because Defendants' records indicate that you fit this definition. Accordingly, you will receive a payment from a collective action settlement if you timely complete and return the enclosed form.**

A former employee of Defendants filed a lawsuit alleging that Defendants failed to pay her and others like her all overtime earned because of Defendants' alleged failure to properly calculate the regular rate for the purposes of paying overtime compensation. Defendants specifically deny any such failure and maintain that they paid their employees accurately and lawfully. The Parties have entered into this settlement solely with the intention of avoiding further disputes and litigation with the attendant inconvenience and expense.

Under the allocation formula created by the settlement, you are estimated to receive approximately $_____, subject to deductions for applicable taxes. The final amount to which you may be entitled may be higher or lower than the estimated amount.

**Your legal rights may be affected and you have a choice to make now.**

**READ THIS ENTIRE NOTICE COMPLETELY AND CAREFULLY.**

| **YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:** | |
|---|---|
| **RETURN THE CONSENT FORM** | By returning a properly completed Claim Form and Release, you agree to participate in the settlement, receive a monetary settlement payment, and release your claims as further described below. You must timely return a properly completed Claim Form and Release postmarked, emailed, or faxed by [90 days from date of mailing], in order to participate in settlement. |
| **DO NOT RETURN THE CONSENT FORM** | If you do not wish to participate in or be bound by the settlement, you should not return the Claim Form and Release. If you do not timely return a properly completed Claim Form and Release postmarked, emailed, or faxed by [90 days from date of mailing], you will not receive a settlement payment, and you will not release any claims. |

BASIC INFORMATION

| 1. Why did I get this notice? |
| --- |

You have received this notice because Defendants' records show that you currently work or previously worked as an hourly employee employed by Defendants in Ohio, worked more than 40 hours in a workweek, were paid additional compensation, including "Oncall" pay and "Emergency Incentive Pay", and have at least $10.00 in alleged damages as determined through the Court-approved settlement, from July 6, 2017 through October 20, 2020.

The Court ordered that you be sent this notice because you have a right to know about the settlement of this collective action lawsuit that affects your rights. This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court overseeing the lawsuit is the United States District Court for the Northern District of Ohio, Eastern Division, Judge Benita Y. Pearson. The lawsuit is known as *Freeman v. Crossroads Hospice of Northeast Ohio LLC, et al.*, Case No. 5:20-cv-1579. The person who filed the lawsuit, Trista Freeman, is called the "Plaintiff." The named "Defendants" are Carrefour Associates LLC, Crossroads Hospice of Cincinnati LLC, Crossroads Hospice of Cleveland LLC, Crossroads Hospice of Dayton LLC, Crossroads Hospice of Northeast Ohio LLC, and Perry Farmer.

| 2. What is the lawsuit about? |
| --- |

Plaintiff alleges in this lawsuit that Defendants failed to pay her and others like her all overtime earned because of Defendants' alleged failure to properly calculate the regular rate for the purposes of paying overtime compensation. Defendants deny the claims and maintain that the paid their employees accurately and lawfully. The Court has not made any ruling on the merits of the claims.

| 3. What is a collective action? |
| --- |

In a "Collective Action," one or more people called "Named Plaintiffs" sue on behalf of people who have similar claims. When other employees who have similar claims opt into the Collective Action, they become "Collective Members" or "Opt-in Plaintiffs." You may opt into the Collective Action and participate in the settlement of the lawsuit by signing and returning the enclosed Claim Form and Release. Even if you joined the case, you should still complete and return the Claim Form.

| 4. Why is there a settlement? |
| --- |

The Court has not made any decisions concerning claims or defenses in favor of Plaintiff or Defendants. The Parties agreed to this settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. That way, they avoid the costs and uncertainties of a trial, and the people affected will get compensation.

### WHO IS IN THE SETTLEMENT

**5. How do I know if I will be included in the settlement?**

You will receive a settlement check if you are or were employed by Defendants as an hourly employee employed by Defendants in Ohio who worked more than 40 hours in a workweek, and who was paid additional compensation, including "Oncall" pay and "Emergency Incentive Pay", and who has at least $10.00 in alleged damages as determined through the Court-approved settlement, from July 6, 2017 through October 20, 2020, **and** you properly complete, sign, and return the enclosed Claim Form and Release by [date 90 days from mailing of Notice].

**6. I'm not sure if I want to be included.**

If you are still not sure whether you would like to be included, you can ask for free help. You can contact Plaintiffs' Counsel as follows:

Robi J. Baishnab
**NILGES DRAHER LLC**
34 N. High Street, Ste. 502
Columbus, Ohio 43215
Email: rbaishnab@ohlaborlaw.com
**(234) 401-9089**

### THE SETTLEMENT BENEFITS – WHAT YOU GET

**7.  What does the settlement provide?**

Defendant has agreed to pay $50,000.00 to be utilized to pay monies to you and others that are covered by the settlement. The settlement amount will be used to pay settlement payments, Court-approved attorneys' fees and costs, settlement administration costs, and a Court-approved service payment to the Named Plaintiff Freeman.

After subtracting attorneys' costs and fees, the costs of settlement administration, and the service payment, the remaining settlement funds for Collective Members will be divided proportionately among individuals who are covered by the settlement based their respective equitable share as determined through settlement negotiations and based on wage and hour data provided by Defendants. Only those with a minimum estimated settlement amount of $10.00 are eligible to participate in settlement. Should such employees not participate, their portion will not be paid and will return to Defendants. **Settlement checks that are not cashed within 180 days will be null and void**, and such funds will return to Defendants.

**8.  How much will my payment be and how was it calculated?**

Based on the formula that has been approved by the Court, you are estimated to receive approximately $_____.  If this amount is $50 or more, half of your settlement award will be subject to deductions for applicable taxes and withholdings like a standard paycheck, and for which you will receive a W-2; and half of it will be reported on an IRS Form 1099. If your settlement award is less than $50, the entire payment will be subject to deductions for applicable taxes and withholdings like an standard paycheck, and for which you will receive a W-2.  The allocation formula takes into consideration the number of weeks that you worked for Defendant(s) during the period of July 6,

2017 through October 20, 2020. The Settlement Agreement contains the exact allocation formula, and you may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 14 below.

## HOW YOU GET A PAYMENT

### 9.  How can I get my payment?

To get your payment, you must fully complete and sign the enclosed Claim Form and Release and mail it to the Claims Administrator in the enclosed envelope postmarked no later than [90 days from date of mailing]. You may also e-mail or fax the Claim Form and Release to the Settlement Claims Administrator, so that it is received no later than [90 days from date of mailing]. The Settlement Claims Administrator's complete contact information is:

Crossroads Hospice Settlement Claims Administrator
P.O. Box _____
Chanhassen, MN 55317-2006
Fax: (952) 404-5750
Email: CrossroadsSettlement@noticeadministrator.com

If you return a properly completed Claim Form and Release by the deadline, you will be sent a settlement check after all appeals have been exhausted.

### 10.  When will I get my payment?

It is possible that there will be an appeal of the Court's order approving the settlement. It is always uncertain whether any appeals can be resolved, and resolving them can take time, perhaps more than a year.

Provided that there are no appeals, you will be sent a check within approximately 30 to 60 days of the expiration of the 90-day deadline to submit Claim Forms.

### 11.  What am I giving up if I sign the Claim Form and Release to get a payment?

Once you agree to, sign, and return the Claim Form and Release, you cannot sue, continue to sue, or be a party in any other lawsuit against Defendants relating to the claims at issue in this case during the time period covered by the settlement. It also means that all of the Court's orders will apply to you and legally bind you. If you do not agree to, sign, and return Claim Form and Release by the deadline, you will not participate in the settlement, you will not receive any payment in the settlement, and you will not be bound by the Court's orders.

## THE LAWYERS REPRESENTING YOU

### 12.  Do I have a lawyer in this case?

Upon signing and returning the Claim Form and Release, you will be consenting to join this case, and you will designate the law firm of Nilges Draher LLC to represent you. These lawyers are called "Plaintiffs' Counsel." You will not be charged for these lawyers. You can find more information about Plaintiffs' Counsel at http://www.ohlaborlaw.com.

You do not need to retain your own attorney in order to participate in the settlement.

| **13.  How will the lawyers be paid?** |
| --- |

The Court has approved payment of attorneys' fees in the amount of one-third (1/3) of the total settlement amount, plus reimbursement of the attorneys' actual out-of-pocket costs. These fees will compensate Plaintiffs' Counsel for investigating the facts, litigating the case, negotiating the settlement, and Plaintiffs' Counsel's out-of-pocket costs.

### GETTING MORE INFORMATION

| **14.  How do I get more information?** |
| --- |

If you have other questions about the settlement, you can contact Plaintiffs' Counsel at the address and/or telephone number below.

Robi J. Baishnab

**NILGES DRAHER LLC**

34 N. High Street, Ste. 502

Columbus, Ohio 43215

Email: rbaishnab@ohlaborlaw.com

**(234) 401-9089**

44083663.2

4851-7983-4324, v. 1

# Exhibit B

## Claim Form

***Freeman v. Crossroads Hospice of Northeast Ohio LLC, et al.***
USDC, ND Ohio; Case No. 5:20-cv-1579

# CLAIM FORM AND RELEASE
## INSTRUCTIONS

---

**In order to receive any portion of the settlement funds described in the Notice of Settlement ("Notice"), you must sign, date, and return this Claim Form and Release to the Settlement Claims Administrator postmarked by ____[\*\*\*90 days from sent\*\*\*]____.**

---

## CHANGES OF ADDRESS

It is **your responsibility** to keep a current address on file with the Settlement Claims Administrator. Please make sure to notify the Settlement Claims Administrator of any change of address.

Crossroads Hospice Settlement Claims Administrator
P.O. Box _____
Chanhassen, MN 55317-2006
Fax: (952) 404-5750
Email: CrossroadsSettlement@noticeadministrator.com

*[DATE]*.

<u>**CLAIM FORM AND RELEASE**</u>

***T*HIS *F*ORM *MUST BE POST-MARKED OR OTHERWISE SUBMITTED TO THE* *S*ETTLEMENT *C*LAIMS *A*DMINISTRATOR *NO LATER THAN* [*D*ATE].**

## I.    CONSENT TO JOIN

I understand that this lawsuit is being brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and related state laws. Pursuant to 29 U.S.C. §216(b), I hereby consent and agree to join the case of *Freeman v. Crossroads Hospice of Northeast Ohio LLC, et al.,* Case No. 5:20-cv-1579 ("the Litigation"). I consent and agree to be bound by any action by the Court. I further agree that the Plaintiff in the Litigation shall act as my agent and make all decisions on my behalf concerning the Litigation, including the settlement thereof.

I hereby designate the law firm of Nilges Draher LLC to represent me in this action.

## II.    RELEASE

My signature below constitutes a full and complete release and discharge of Carrefour Associates LLC, Crossroads Hospice of Cincinnati LLC, Crossroads Hospice of Cleveland LLC, Crossroads Hospice of Dayton LLC, Crossroads Hospice of Northeast Ohio LLC, and Perry Farmer ("Defendants") and any of their officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates thereof, and otherwise related entities and any other persons acting by, through, under, or in concert with, any of these persons or entities, and their successors by me and by my spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring, from all federal, state, and/or local wage-and-hour claims that were or could have been alleged in the Litigation, including but not limited to unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses pursuant to the FLSA and Ohio law through [DATE OF COURT APPROVAL OF SETTLEMENT]. I understand that I do not waive, any rights or claims for claims for workers' compensation, claims for unemployment, or claims that cannot be released by law. I also understand that I will not release any claims if I do not cash my settlement check.

| | |
|---|---|
| _____ | _____ |
| Full Legal Name (print) | Signature |
| _____ | _____ |
| Maiden or other names worked under | Street Address |
| _____ | _____ |
| E-mail Address | City, State and Zip Code |
| _____ | _____ |
| Cell phone | Home Telephone Number |

4823-6250-7476, v. 1

# Exhibit C
Payment List

| No. | JLID | Class Payment |
|-----|------|---------------|
| 1 | 30 | $72.12 |
| 2 | 35 | $51.62 |
| 3 | 38 | $19.59 |
| 4 | 40 | $35.79 |
| 5 | 41 | $135.30 |
| 6 | 43 | $63.65 |
| 7 | 44 | $50.78 |
| 8 | 45 | $80.15 |
| 9 | 46 | $27.69 |
| 10 | 48 | $23.78 |
| 11 | 50 | $18.31 |
| 12 | 51 | $24.40 |
| 13 | 57 | $13.33 |
| 14 | 58 | $71.12 |
| 15 | 59 | $36.80 |
| 16 | 60 | $11.98 |
| 17 | 63 | $146.77 |
| 18 | 67 | $10.57 |
| 19 | 68 | $18.03 |
| 20 | 69 | $100.03 |
| 21 | 78 | $17.74 |
| 22 | 82 | $14.42 |
| 23 | 92 | $17.75 |
| 24 | 106 | $221.79 |
| 25 | 108 | $32.78 |
| 26 | 109 | $12.44 |
| 27 | 110 | $16.85 |
| 28 | 112 | $28.78 |
| 29 | 116 | $15.88 |
| 30 | 119 | $14.84 |
| 31 | 121 | $41.82 |
| 32 | 122 | $31.83 |
| 33 | 124 | $12.77 |
| 34 | 126 | $36.77 |
| 35 | 127 | $21.30 |
| 36 | 133 | $11.37 |
| 37 | 135 | $23.47 |
| 38 | 161 | $22.43 |
| 39 | 171 | $32.41 |
| 40 | 181 | $24.01 |
| 41 | 188 | $33.85 |
| 42 | 192 | $26.19 |
| 43 | 196 | $35.50 |
| 44 | 197 | $60.27 |
| 45 | 199 | $13.24 |
| 46 | 200 | $24.84 |
| 47 | 202 | $26.41 |
| 48 | 203 | $11.76 |
| 49 | 205 | $17.27 |
| 50 | 207 | $11.24 |
| 51 | 208 | $45.25 |
| 52 | 209 | $11.19 |
| 53 | 211 | $32.72 |
| 54 | 212 | $49.00 |
| 55 | 214 | $26.19 |
| 56 | 216 | $10.34 |
| 57 | 218 | $18.35 |
| 58 | 219 | $64.81 |
| 59 | 220 | $12.51 |
| 60 | 223 | $30.77 |
| 61 | 227 | $52.33 |
| 62 | 229 | $11.16 |
| 63 | 230 | $20.80 |
| 64 | 233 | $63.77 |
| 65 | 236 | $30.10 |
| 66 | 237 | $73.37 |
| 67 | 239 | $30.18 |
| 68 | 240 | $57.02 |
| 69 | 248 | $35.15 |
| 70 | 249 | $46.38 |
| 71 | 251 | $56.43 |
| 72 | 252 | $39.28 |
| 73 | 253 | $31.75 |
| 74 | 261 | $15.66 |
| 75 | 266 | $18.43 |
| 76 | 275 | $36.76 |
| 77 | 280 | $12.39 |
| 78 | 283 | $21.59 |
| 79 | 284 | $43.10 |
| 80 | 286 | $56.02 |
| 81 | 287 | $23.93 |
| 82 | 290 | $10.00 |
| 83 | 292 | $36.56 |
| 84 | 293 | $23.21 |
| 85 | 294 | $13.28 |
| 86 | 315 | $12.72 |
| 87 | 333 | $12.12 |
| 88 | 371 | $50.29 |
| 89 | 373 | $23.43 |
| 90 | 374 | $191.97 |
| 91 | 378 | $19.58 |
| 92 | 380 | $358.31 |
| 93 | 381 | $23.37 |
| 94 | 384 | $53.81 |
| 95 | 388 | $435.31 |
| 96 | 389 | $18.72 |
| 97 | 391 | $277.42 |
| 98 | 392 | $676.12 |
| 99 | 394 | $13.31 |
| 100 | 395 | $10.34 |
| 101 | 402 | $53.58 |
| 102 | 403 | $110.11 |
| 103 | 408 | $11.38 |
| 104 | 414 | $29.89 |
| 105 | 417 | $153.15 |
| 106 | 424 | $72.56 |
| 107 | 425 | $28.29 |
| 108 | 426 | $62.86 |
| 109 | 432 | $11.10 |
| 110 | 440 | $18.19 |
| 111 | 460 | $11.17 |
| 112 | 465 | $45.22 |
| 113 | 468 | $18.66 |
| 114 | 474 | $12.08 |
| 115 | 475 | $76.42 |
| 116 | 479 | $51.97 |
| 117 | 482 | $12.89 |
| 118 | 483 | $214.95 |
| 119 | 485 | $53.39 |
| 120 | 487 | $46.93 |
| 121 | 489 | $15.68 |
| 122 | 490 | $13.98 |
| 123 | 492 | $18.93 |
| 124 | 493 | $262.24 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 125 | 496 | $1,356.68 | 167 | 607 | $310.80 | 209 | 695 | $64.66 |
| 126 | 499 | $54.94 | 168 | 608 | $6,571.43 | 210 | 700 | $29.57 |
| 127 | 502 | $37.89 | 169 | 610 | $130.95 | 211 | 726 | $168.09 |
| 128 | 506 | $42.22 | 170 | 612 | $98.61 | 212 | 727 | $275.49 |
| 129 | 510 | $30.54 | 171 | 613 | $450.78 | 213 | 730 | $23.76 |
| 130 | 515 | $43.96 | 172 | 614 | $124.24 | 214 | 734 | $19.95 |
| 131 | 518 | $171.54 | 173 | 615 | $1,365.43 | 215 | 739 | $11.16 |
| 132 | 519 | $153.65 | 174 | 617 | $81.86 | 216 | 746 | $12.70 |
| 133 | 523 | $18.85 | 175 | 618 | $41.68 | 217 | 750 | $137.54 |
| 134 | 524 | $32.94 | 176 | 619 | $149.70 | 218 | 751 | $20.77 |
| 135 | 525 | $57.74 | 177 | 620 | $57.59 | 219 | 758 | $20.32 |
| 136 | 526 | $11.86 | 178 | 622 | $58.05 | 220 | 792 | $10.31 |
| 137 | 527 | $24.26 | 179 | 623 | $34.95 | 221 | 811 | $14.51 |
| 138 | 528 | $18.79 | 180 | 624 | $78.51 | 222 | 817 | $15.72 |
| 139 | 530 | $70.95 | 181 | 626 | $295.69 | 223 | 819 | $68.86 |
| 140 | 531 | $117.11 | 182 | 628 | $95.18 | 224 | 832 | $10.88 |
| 141 | 533 | $46.05 | 183 | 630 | $90.20 | 225 | 834 | $92.26 |
| 142 | 534 | $44.45 | 184 | 632 | $36.88 | | | |
| 143 | 535 | $69.36 | 185 | 633 | $13.07 | | **Total** | **$23,272.48** |
| 144 | 536 | $27.69 | 186 | 636 | $81.99 | | **Average** | **$103.43** |
| 145 | 538 | $12.69 | 187 | 640 | $187.91 | | | |
| 146 | 540 | $41.13 | 188 | 641 | $35.78 | | | |
| 147 | 541 | $31.59 | 189 | 642 | $122.08 | | | |
| 148 | 543 | $11.50 | 190 | 643 | $34.85 | | | |
| 149 | 545 | $29.10 | 191 | 645 | $113.93 | | | |
| 150 | 547 | $12.48 | 192 | 648 | $10.47 | | | |
| 151 | 549 | $38.26 | 193 | 649 | $22.01 | | | |
| 152 | 551 | $212.75 | 194 | 652 | $28.49 | | | |
| 153 | 553 | $69.19 | 195 | 664 | $31.74 | | | |
| 154 | 554 | $40.70 | 196 | 665 | $12.16 | | | |
| 155 | 568 | $25.54 | 197 | 669 | $159.31 | | | |
| 156 | 574 | $44.97 | 198 | 670 | $20.85 | | | |
| 157 | 575 | $256.65 | 199 | 673 | $24.44 | | | |
| 158 | 582 | $304.17 | 200 | 674 | $46.50 | | | |
| 159 | 584 | $17.35 | 201 | 675 | $22.63 | | | |
| 160 | 585 | $41.01 | 202 | 677 | $106.53 | | | |
| 161 | 589 | $23.29 | 203 | 682 | $522.24 | | | |
| 162 | 590 | $10.79 | 204 | 684 | $16.68 | | | |
| 163 | 601 | $30.26 | 205 | 688 | $18.76 | | | |
| 164 | 604 | $89.71 | 206 | 689 | $31.02 | | | |
| 165 | 605 | $32.43 | 207 | 692 | $16.85 | | | |
| 166 | 606 | $27.80 | 208 | 693 | $22.24 | | | |